UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENYA N. SPRATT,

       Plaintiff,                       Civil Action No. 17-CV-12844

v.

                                         HON. MARK A. GOLDSMITH

FCA US LLC,

       Defendant.
_____/

**OPINION & ORDER**
**DENYING PLAINTIFF'S MOTION IN LIMINE (Dkt. 62)**

Plaintiff Kenya Spratt filed a four-count complaint alleging the following: wrongful discharge in violation of Michigan public policy (Count I); race discrimination in violation of Title VII of the Civil Rights Act of 1964 (Count II); interference with the Family and Medical Leave Act (FMLA) (Count III); and retaliation in violation of the FMLA (Count IV). This Court granted summary judgment on all claims in favor of Defendant FCA US LLC. 3/25/19 Op. (Dkt. 31). Spratt appealed the Court's grant of summary judgment to FCA on his race discrimination claim. The United States Court of Appeals for the Sixth Circuit reversed this Court's judgment and remanded this case for further proceedings. 5/13/20 COA Op. (Dkt. 40). This matter is now before the Court on Spratt's motion in limine. Pl Mot. (Dkt. 62).[1] For the following reasons, the Court denies Spratt's motion.

**I. BACKGROUND**

Until April 2017, Spratt worked as a Senior Construction Buyer for FCA. 5/13/20 COA

---

[1] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). In addition to Spratt's motion, the briefing includes FCA's response (Dkt. 66).

1

Op. at 2. While employed in this position, Spratt was tasked with identifying potential contractors for a large-scale construction project renovating the Chrysler Technology Center in Auburn Hills, Michigan. In February 2017, FCA investigated Spratt's activities related to this project. Id. at 5. As Spratt admits, "the investigation conclusively determined that [Spratt] falsified certain numbers in the initial bid summary" for the project. Id. However, Spratt contends that he falsified the numbers "only for the purpose of safeguarding the integrity of the bidding process," as he was suspicious that FCA's internal client was biased in favor of selecting a certain contractor for the project. Id. at 6. The investigation "also revealed that [Spratt] had a 'personal relationship' with . . . Ehrlich Crain," a business development leader for the contractor that Spratt had suggested for the project. Id. at 5. Additionally, the investigation uncovered Spratt's undisclosed ownership of a real estate development company. Investigative Report at PageID.1200 (Dkt. 66-2).

Following the investigation into Spratt's misconduct, FCA terminated Spratt. Termination Letter (Dkt. 66-3). However, Spratt asserts that "the real reason for his termination was his African American race." 5/13/20 COA Op. at 6. As evidence, he points out that FCA "did not terminate his Caucasian predecessor in the Senior Buyer position—Patrick Bergin—who engaged in similar conduct [(which was investigated in 2014)], but instead of being terminated, Bergin was effectively promoted." Id.

## II. ANALYSIS

Irrelevant evidence is inadmissible. Fed. R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Even if evidence is relevant, it is nevertheless inadmissible if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay,

2

wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Spratt seeks to exclude two categories of argumentation and evidence as irrelevant or prejudicial. The first category concerns FCA's investigation of Spratt "for wrongdoing beyond or outside of his falsification of contractor bid documents (FCA's stated reason for his firing)." Pl. Mot. at 6. The second category concerns FCA's "honest belief" that Spratt committed the misconduct that led to his termination. Id. The Court addresses each category in turn.

**A. Investigations of Wrongdoing**

Title VII prohibits employers from "fail[ing] or refus[ing] to hire or to discharge any individual, or otherwise [] discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2 (2010). "The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 153 (2000). A plaintiff may succeed in his Title VII claim "by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 517 (1993).[2]

---

[2] Spratt contends that "[t]he sole issue to be tried in this case is whether FCA's reason for terminating [] Spratt was pretext based on FCA's more favorable treatment of [] Spratt's Caucasian predecessor . . . ." Pl. Mot. at 5. This inaccurately suggests that the McDonnell Douglas burden-shifting framework applies at trial. The first step of this framework requires the plaintiff to establish a prima facie case of discrimination. Wheat v. Fifth Third Bank, 785 F.3d 230, 237 (6th Cir. 2015). The second step requires the employer to articulate legitimate, nondiscriminatory reasons for the adverse employment action. Id. And, if the employer meets its burden, the third step requires the plaintiff to show that the employer's nondiscriminatory reasons were pretext for discrimination. Id. "[W]hen the defendant fails to persuade the district court to dismiss the action for lack of a prima facie case, and responds to the plaintiff's proof by offering evidence of the reason for the plaintiff's [termination], the factfinder must then decide whether the [termination] was discriminatory within the meaning of Title VII." Noble v. Brinker Intern, Inc., 391 F.3d 715,

Spratt acknowledges that evidence of FCA's investigation into his falsification of contractor bids is relevant to the issue of FCA's motivation for firing him. Pl. Mot. at 6. FCA's investigations of Spratt for other wrongdoings, Spratt contends, are not at issue. Id. Spratt specifically seeks to exclude evidence of investigations into (i) Spratt's formation of "a business to develop residential real estate properties which was not disclosed to FCA" and (ii) his request that "FCA pay for him to attend a seminar to enhance his skills as a commercial construction buyer which FCA alleges was designed to assist attendees in obtaining residential builders' licenses." Id. Additionally, Spratt argues that admission of such evidence would prejudice him. Id. But Spratt fails to explain exactly how prejudice would result. Presumably, he is concerned that evidence of other wrongdoing would create for the jury an unfavorable impression as to his character.

FCA ostensibly agrees that it should not introduce evidence of investigations of Spratt's misconduct beyond the misconduct that led to his termination. However, FCA contends that Spratt inaccurately narrows FCA's stated reasons for his termination to just Spratt's falsification of the contractor bids. Def. Resp. at 4. In reality, Spratt's termination letter states that FCA decided to terminate him "[b]ased on the results of . . . [the] investigation" into "the allegations that [Spratt] . . . intentionally falsified vendor bid information <u>and</u> engaged in conduct that appeared to constitute a conflict of interest with FCA." Termination Letter (emphasis added). According to the investigation report referenced in the termination letter, the allegations of conduct "constitut[ing] a conflict of interest with FCA" refer to (i) Spratt's undisclosed "engage[ment]" in

---

720 (6th Cir. 2004) (punctuation modified). Thus, after a case survives summary judgment, the burden-shifting framework "drops from the case." Id. (punctuation modified). That is, "the sole remaining issue [is] discrimination <u>vel non</u>." Reeves, 530 U.S. at 143 (punctuation modified). The ultimate issue for the jury to decide is whether FCA intentionally discriminated against Spratt based on his race. Noble, 391 F.3d at 721.

a personally-owned business" intended to "focus on the development of real estate property" and (ii) his personal relationship with Cain. Investigative Report at PageID.1200–1201. FCA maintains that it should be permitted to introduce evidence concerning all of the investigated misconduct that led to Spratt's termination.[3]

Spratt, having elected to not file a reply brief, declined the opportunity to comment on FCA's assertion that the investigation leading to his termination covered misconduct beyond Spratt's falsification of bids—i.e., Spratt's undisclosed involvement with the real estate development business and his personal relationship with Cain.

Arguments and evidence of Spratt's misconduct that FCA investigated and that led to Spratt's discharge are plainly relevant to the ultimate issue in this case—FCA's motivation for terminating Spratt. While such evidence is unfavorable for Spratt, this does not mean that it would unfairly prejudice him. See In re Air Crash Disaster, 86 F.3d 498, 538 (6th Cir. 1996) ("Rule 403 does not exclude evidence because it is strongly persuasive or compellingly relevant—the rule only applies when it is likely that the jury will be moved by a piece of evidence in a manner that is somehow unfair or inappropriate. The truth may hurt, but Rule 403 does not make it inadmissible on that account."). The Court, therefore, will not preclude the arguments and evidence in the first category.

### B. Honest Belief

Next, Spratt seeks to prevent FCA from arguing or presenting evidence of its honest belief that Spratt committed the misconduct that led to his termination. Pl. Mot. at 6. This rule provides that if an "employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is

---

[3] The Court notes that in its response, FCA does not argue that it will introduce evidence of an investigation into Spratt's request for FCA to pay for him to attend a seminar.

ultimately shown to be incorrect." Majewski v. Automatic Data Processing, Inc., 274 F.3d 1106, 1117 (6th Cir. 2001). Spratt argues that the honest belief rule "'only applies when a plaintiff is proceeding solely on the basis that the proffered reason has no basis in fact.'" Pl. Mot. at 7 (quoting Hawthorne v. Univ. of Tenn. Health Science Ctr., 203 F. Supp. 3d 886, 892 n.4 (E.D. Tenn. 2016)). Here, Spratt "is not disputing that he modified contractor bid amounts on an initial summary document and that FCA fired him for that reason"; instead, he argues that FCA's proffered reasons did not actually motivate the termination. Id. at 7–8.

FCA contends that Spratt "[m]isstates" the applicability of evidence and arguments concerning FCA's honest belief. Def. Resp. at 6. Spratt conceded that he falsified records, but he did not concede the other allegations of misconduct that were investigated and led to his termination; thus, if Spratt attempts to argue at trial that these other allegations are factually false, FCA "should not be foreclosed from asserting that it honestly believed these allegations to be true at the time it made the decision to terminate." Id. Further, even if the honest belief defense were unavailable, FCA should still be permitted to argue at trial that "it honestly believed that Plaintiff's admitted misconduct was worse than the alleged misconduct of another employee, [Bergin,] and therefore it had legitimate, non-discriminatory business reasons for treating the employees differently." Id. at 7.

Spratt's argument presumes that the McDonnell Douglas framework applies at the jury trial stage.[4] It does not. See Noble, 391 F.3d at 720. At trial, a defendant-employer is free to make

---

[4] "[I]n the context of the evidentiary burdens borne by the parties under the McDonnell Douglas framework, the honest belief rule serves to rebut the plaintiff's evidence of pretext at the third step of the analysis." Briggs v. Univ. of Cincinnati, 11 F.4th 498, 514 (6th Cir. 2021). The Sixth Circuit has suggested that the rule operates to stand in the way of a plaintiff's ability to show pretext only when he tries to do so by putting up evidence that the defendant's proffered reasons are factually false. See Joostberns v. United Parcel Servs., Inc., 166 F. App'x. 783, 795 n.5 (6th Cir. 2006) ("The honest belief rule would not prevent Plaintiff from establishing pretext through methods other than the falsity of the reason offered.").

arguments and present evidence about its honest belief in its nondiscriminatory reason for discharging a plaintiff. This is because an employer's reason for terminating the plaintiff directly goes to the question of whether the employer intentionally discriminated against the plaintiff due to his race. See McDole v. City of Saginaw, 471 F. App'x 464, 477 (6th Cir. 2012) (holding that the district court did not abuse its discretion by omitting a standalone jury instruction regarding honest belief and, instead, instructing the jury that "[i]ntentional discrimination means one of the motives or reasons for the plaintiff's discharge was race"; this instruction "substantially cover[ed] the honest belief rule: it does not matter whether the [employer] . . . mistakenly believed [the plaintiff] . . . assaulted [a third party] . . .; it only matters if the [employer] . . . intentionally discriminated against [the plaintiff] . . . based upon his race.").

Spratt puts forth no reason that evidence and arguments regarding FCA's honest belief would be irrelevant or prejudicial other than the inapplicability of the rule at the pretrial stage of litigation. Spratt cannot point to any authority prohibiting an employer from presenting arguments and evidence about its honest belief at trial, and the Court is not aware of any such authority. Accordingly, the Court will permit FCA to argue and present evidence of its honest belief that Spratt committed the misconduct that led to his termination, and that this misconduct was worse than Bergin's misconduct.

### III. CONCLUSION

For the foregoing reasons, the Court denies Spratt's motion in limine (Dkt. 62).

SO ORDERED.

Dated: July 7, 2022   s/Mark A. Goldsmith
Detroit, Michigan    MARK A. GOLDSMITH
                     United States District Judge